## BREWERTON v. LA BORDE et al.

### No. 6130.

Court of Appeal of Louisiana. Second Circuit.

June 10, 1940.

Coleman & Morgan, of Shreveport, for appellant.

John B. Files, of Shreveport, for appellees.

HAMITER, Judge.

Plaintiff, Louis C. Brewerton, was injured during the afternoon of June 4, 1938, when an automobile in which he was a passenger overturned on a graveled highway near Campti, Louisiana. The vehicle, on the occurrence of the accident, was being driven by a negro named Isiah Mc-Neil, and belonged to plaintiff's step-son, E. H. LaBorde. A policy of insurance written by the Consolidated Underwriters, insuring the owner against property damage and damages on account of bodily injuries, affected it.

The owner and the insurer are made defendants in this action, against whom plaintiff asks damages for his sustained injuries.

Defendant LaBorde is sought to be held liable for the alleged negligent driving of McNeil on the theory, and plaintiff so avers, that "at the time of the accident petitioner was riding in the said automobile as an invited guest, having been invited to ride in the automobile by the said Edward H. LaBorde, and that Isiah McNeil was employed by said Edward H. LaBorde and was acting as his agent within the course and scope of his employment in driving the automobile at the time of the aforementioned accident, and that the negligence of the said McNeil is imputable to the said Edward H. LaBorde." In other allegations of the petition, the driver McNeil is referred to as LaBorde's chauffeur.

The contended liability of the insurance company is predicated on the clause of the policy insuring "against loss by reason of the liability imposed by law upon the subscriber (LaBorde) for damages on account of bodily injuries * * * accidentally inflicted upon any person, * * *."

Defendants, in their joint answer, deny all liability growing out of the accident. They set up the affirmative defenses that, (1) plaintiff and defendant LaBorde and others were participating in a fishing and

camping trip to Black Lake near Campti, Louisiana, which was in the nature of a joint adventure and, (2) that "at the time of the said accident, plaintiff was in full control of the car and the driver thereof, and any negligence that may have occurred was while the car was under the supervision of the plaintiff in this case."

Following the trial of the case, the district judge, as his well considered written opinion discloses, sustained the mentioned second defense, holding that the driver McNeil was under the direct control and supervision of plaintiff; and he ordered the suit dismissed. The other defense, involving the question of joint enterprise, was not passed upon.

This appeal was perfected by plaintiff.

All of the testimony adduced during the trial was given by plaintiff and other witnesses appearing in his behalf. The facts of the case, developed from such evidence, are fairly and substantially stated in the brief of plaintiff's counsel, and we quote therefrom as follows:

"Sometime during the week preceding Saturday, June 4th, 1938, the plaintiff had telephoned his step-son, the defendant herein, to make arrangements for a fishing trip on Black Lake for the coming weekend. During this conversation on the telephone, the defendant, LaBorde, did not know whether he would go on the fishing trip or not, but agreed to make the arrangements for the trip. Mr. LaBorde called to Black Lake and reserved a camp house from a Mr. Bell at what is known as Bell's Camp, and, in addition to this, contacted the Colonial Sandwich Shop in Shreveport with the idea in mind of borrowing one of their negro cooks to go on the fishing trip to do the cooking and cleaning up. He was successful in obtaining the services of a negro by the name of Isiah McNeil.

"Mr. Brewerton arrived in Shreveport on Friday, June 3, 1938, in company with two friends, Mr. Dave Anderson and Mr. Syd Groner. Upon his arrival, he contacted Mr. LaBorde and discussed with him the proposed fishing trip. At that time, it was still uncertain as to whether Mr. LaBorde could come on the fishing trip or not but that if he could get away, he was to come down the next day, which was Saturday, June 4, 1938. Mr. Mack Brewerton and Dr. Jewel, brother and friend respectively of the plaintiff, were equally uncertain as to whether they could come or not, but if

so, were to come the following day with Mr. LaBorde. Specific instructions were left with Mr. LaBorde that if he did come down the following day, he was to bring two pints of whiskey with him.

"During the afternoon of June 3, Mr. Brewerton, Mr. Anderson and Mr. Groner left Shreveport for the camp taking the negro, Isiah McNeil, with them.

"The following day Mr. LaBorde, Mack Brewerton and Dr. Jewel learned that they would be able to go on the fishing trip. The three of them left Shreveport shortly after noon with Mr. LaBorde in his 1939 Oldsmobile coupe. Mr. LaBorde bore all of the expenses of his trip, neither Dr. Jewel or Mack Brewerton participating therein. In fact, no expenses were ever discussed among the parties. Mr. LaBorde arrived at the Camp around 3:30 or 4:00 o'clock P. M. Upon his arrival, the first thing that was done was to unpack the fishing equipment. Then someone asked Mr. LaBorde if he had brought the whiskey. He stated that he did not, but that he would send to the town of Campti, Louisiana, for some. Thereupon he placed the keys to his car in the possession of the negro, Isiah McNeil, with instructions to take his car to Campti and get some liquor.

"On second thought, Mr. LaBorde decided that someone should go with the negro and wanted his step-father, the plaintiff in this case, to go. The plaintiff, Mr. Brewerton, was asleep in the camp at the time of Mr. LaBorde's arrival. Upon learning that Mr. Brewerton was asleep, Mr. LaBorde instructed the negro to wake Mr. Brewerton and get him to go. At first Mr. Brewerton did not want to go, but LaBorde insisted that he go with the negro. When Mr. Brewerton went to the car, he found the negro had the keys and was sitting under the wheel of the car as if ready to drive off. Mr. Brewerton decided to drive and thereupon took the negro's place under the wheel and drove off in the direction of Campti, Louisiana.

"On the return trip to the camp, the negro had asked to drive the car, having been previously instructed by Mr. LaBorde, the owner of the car, to take the car and make the trip. Mr. Brewerton acquiesced in the request. When approximately two or two and one-half miles from Campti on the gravel road to the lake, Mr. Brewerton noticed that the negro was driving excep-

tionally fast under the circumstances and requested that he slow the car down. At this, the negro, instead of placing his foot on the brake, stepped on the gas, losing control of the car in the wash gravel. The car got completely out of the control of the negro and turned over in the ditch. It was in this accident that Mr. Brewerton was seriously injured."

The quoted statement of facts submitted by counsel for plaintiff, and certain specific testimony to which reference is hereafter made, forces us to conclude that the driver McNeil was not a chauffeur or agent of defendant LaBorde, and that the decision of the district court is correct.

All arrangements for the weekend trip to Black Lake, including the general employment of the negro McNeil, were made at the request and in the interest of plaintiff. He testifies: "I had some friends in Dallas who had heard about Black Lake and the good fishing there and if we could make arrangements for Friday we were going down to Black Lake. * * * I phoned Eddie (LaBorde) and told him that we wanted to go fishing down at Black Lake and that if he could get us the camp we would try to arrange to go down there Friday afternoon, spend Saturday and leave Sunday morning." These friends of plaintiff, whom he wished to entertain, were sales manager and credit manager, respectively, of the company with which he was associated. When telephoning the defendant step-son, he specifically instructed the employing of a boy to cook and clean up the camp for them.

There was some discussion with reference to whose automobile would be used for the trip to Campti. The machine belonging to LaBorde was finally decided upon; and he delivered the keys thereof to McNeil. Before the trip began, however, the owner prevailed upon plaintiff to "go along with the boy to keep from wrecking my car." As to the reason for his making the journey, plaintiff states, "Well, Eddie had a new car, was the reason, and he didn't want this negro boy to go up there by himself. He wanted me to be with him to watch him drive;" and again, "Why, I guess they felt if I went with the boy I would have him under control and would watch him and he wouldn't drive too fast and wreck the car. To be with him on the road, I imagine; I don't know." The departure from the camp was made, as above shown, with plaintiff driving the machine.

In the words of the trial judge, to which statement we give approval, the testimony "conclusively shows that the car was placed under the control of the plaintiff in order to try and prevent just what happened in this case." Therefore, the negligence of McNeil is not imputable to the defendant LaBorde; and neither he nor his insurer is liable unto plaintiff.

The judgment is affirmed.